The United States Court of Appeal for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. The first case this morning is 08-1498, Sofpool v. Intex Recreation. Mr. Majestic. If I please the court, I'm Mark Majestic representing Sofpool. This design patent case was tried under the laws that existed before Egyptian goddess was decided. By the way, before you begin, have you resolved the controversy over the exhibits that you were going to use this morning? I believe I have. No problem with that now? Resolved? Yes. All right. Thank you. Yes, we talked about it just before. All right. Sorry, go ahead. Again, this was decided before the Egyptian goddess was decided. The plaintiff had to prove at that time infringement under two tests. The ordinary observer test and the points of novelty test. Egyptian goddess threw out the points of novelty test and therefore the plaintiff is entitled to a new trial. If you look at page 5 of our opening brief, it's a page before page 6 that doesn't have a number. We have a juxtaposition of our patent drawings versus the accused. Let me ask you something. It seems to me your basic case as I see it is rather simple. As I understand, this is what happened. The judge instructed the jury that in order to find infringement, they had to satisfy both of the tests. That's what it says. The jury did not render any specific verdict, but a general verdict holding there was no infringement. It's possible that what the jury did to find no infringement was to say, well, there was infringement or there may have been infringement under the ordinary observer test, but there was no infringement under the point of novelty test. And we don't know on what basis the jury brought in its verdict. And in those circumstances, since under Egyptian goddess, if the jury had found that there was infringement under the first test, that would have been the end of it. So it's possible that in this case the jury could have come out the other way if the Egyptian goddess had been decided beforehand. And therefore, why isn't it appropriate to say that the jury verdict cannot stand and the case has to be remanded for a retrial under the current state of the law of Egyptian goddess?  Pardon? I could not have said it better, Your Honor. Yeah, but did you object to the district court's jury instruction? All of that's premised on whether or not it's properly before us. If you waived your opportunity to object, then the district court had no chance to really rule on the motion. Well, we had two answers there, Your Honor. We informed the court at the time of the Markman hearing of the pendency of Egyptian goddess, which had not yet come down. The court said in its Markman ruling, I guess in a footnote, that it was going to follow existing law, which is certainly understandable. And they proceeded on that basis. Therefore, we did not do anything further at that point. We did file in our motion for a new trial. When the instruction was given, it was a correct instruction. It wasn't as the law then stood. It was only after the jury had brought in its verdict that we changed the law in Egyptian goddess. Right. That is correct, Your Honor. So, you're absolutely right. The instruction was correct as it was done. I think everything was done correctly. Basically, what you're saying is you had no occasion to object to what the district court did at the trial because what the district court did at that time was proper and no one could anticipate at that time exactly what we were going to do in Egyptian goddess. We did not anticipate that, Your Honor. In fact, in the court presentation, as a little aside, I was a judge in San Francisco along with another magistrate judge and another colleague of mine wearing robes like yours, trying to decide the Egyptian goddess case. We called it right down the line except for the retention of the claim construction part. But it was speculative at the time. And so we did what we had to do. But we retained it under a cloud, didn't we? We said, okay, you can do it, but it doesn't make much sense. Well, that's correct, Your Honor. And the way it's written, I think it's workable because it gives the district court judge an awful lot of flexibility. They don't have to use it. In fact, in a program that I attended after that, it's believed by some that judges will probably not do it in most cases. They will not render a claim construction a design patent case because a picture may be worth a thousand words, but a thousand words are not worth a picture. I think that's a fair statement. And we saw in some of the amicus briefs, in fact, in the Egyptian goddess, that horrible claim construction with the propeller, many, many words long to describe what a propeller looked like. Even in our case, we have a fairly lengthy claim construction, although it's fairly well written. But anyway, I hope that answers the question about why we didn't object at the time. Again, we did have a motion for a new trial. We brought it up again in a motion for a new trial. We said in that motion for a new trial that the motion for a new trial was being filed in an abundance of caution, and we did that because we didn't want this court to say we had waived. So we filed that. I believe the court below said no within two days of our filing of the motion for a new trial. So here we are. Did the trial give much emphasis to validity considerations? Why isn't a lot of this functional? Only over on the validity was not challenged on the round pool side. It was completely done on infringement. On the oval pool patent side, they did raise a validity challenge. The jury found that the oval pool patent was not invalid. So there we are. You'll have to, I think, ask opposing counsel that question as to why there was a difference in not having a validity challenge on the round pool side and having one on the oval pool side. Anyway, I'm deferring the court to the side-by-side comparison of the oval pool with the patent. And then finally, Intex conceded infringement under the ordinary observer test for the 817 oval pool. And there's nothing in the record that would allow them to say  having admitted this at trial. I believe all of our points are set forth in our briefs. Unless there are any further questions, I would like to take my remaining time for rebuttal. All right. Thank you. Mr. Carter. I doubt you're going to have much use for that. Unless you can tell us why an erroneous jury instruction is not grounds for a new trial, I don't think we're going to need to look at pictures very much. Thank you, Your Honor. My name is Trevor Carter here on behalf of Intex Recreation Corp. And to answer your question about the jury instruction, this court's recent case of kinetic concepts that we provided in supplemental authority, it was a decision by this court in February of this year. It involved a jury instruction based on KSR that was clearly erroneous, pre-KSR that was clearly erroneous. It stated that the teaching suggestion motivation test had to be met for obviousness. That's a case coming out of the Fifth Circuit just as the- But why is that wrong? But why is that wrong? It said that that was a requirement in that case for a finding of obviousness, that you had to meet the teaching- If the PSM test is nothing more than a requirement that you have evidence from before the time of invention, which is according to the statute, then the instruction is entirely correct. In that case, it was being argued that that instruction was erroneous. And this court said that the objection to that instruction, just like the objection in this case, came for the first time on appeal. And the standard is the plain air standard under Fifth Circuit law. And you look at the entire record to see if the jury instruction was probably responsible for an incorrect verdict leading to substantial injustice. So just as in that case where the jury verdict was upheld, we believe that it should be in this case also. In this case, was the law correct at the time the judge gave the instruction? The instruction that was provided to the jury, we believe, was consistent with Egyptian goddess. On what basis did the jury- How do you say that? On what basis? Can you tell us on what basis the jury concluded that there was no infringement here? We don't know, do we? Yeah, for the 546 patent, we asked for a specific verdict form. No, but from a jury verdict, can we tell on what basis the jury decided this? We cannot. We cannot. We cannot. We did our best. And it could have been on a basis, I take it, it could have been on a basis that is now incorrect under Egyptian goddess, couldn't it? It could have been based on, as the jury was instructed, the ordinary observer test or the point of novelty test. But the jury was also instructed how to satisfy both of them. Yes, the plaintiff must satisfy both tests for there to be infringement. I'm reading that from the jury instruction. How is that correct under Egyptian goddess? That is the only part of the instruction that is not correct. It's a rather big part, isn't it, since the whole thrust of Egyptian goddess was to get rid of the point of novelty test. And suddenly this says it has to be satisfied. That's wrong, right? That is wrong. But if you step back and look at the jury instruction as a whole, the jury was instructed to look at the pools as a whole for the entire infringement test, not feature by feature. Well, if it's so, if that's so, could the jury consistently with the instructions have found no infringement without considering the point of novelty test? Yes, for the 546 patent, we were seeking non-infringement based on ordinary observer and point of novelty. We don't know what it is. You just said a minute or two ago that was the only point in the jury instructions that the issue is right, but a single erroneous jury instruction is enough to require reversal of the jury verdict, isn't it? I mean, if you're going to just look at the instructions as a whole, as you suggested, and in general terms you'd never reverse for any improper instruction because you'd always find some other instructions that seemed to support what the jury did. In this case, I believe once again it's important to look at the plain air standard, and that is looking at the record, and particularly the record for the 546 patent. Can you say that that jury instruction was probably responsible for an incorrect verdict? The prosecution history in this case for the 546 patent is very extensive for design patents. Egyptian goddess sets out that the ordinary observer test is now conducted looking at the prior art. Here we have undisputed facts about the very close Tempo Pool prior art, and we have the undisputed facts of looking at Soft Pool's statements in the file history, not during litigation by either party, but in the file history at the patent office, as to the differences between the very close Tempo Pool prior art and what they have in their patent drawings. Looking at those differences in the prosecution history is what we can use to apply Egyptian goddess to the facts of this case. Egyptian goddess, as you know, did not involve a remand back to the district court. That was a case that came up on summary judgment based only on a point of novelty determination. There the court looked at the same facts, and while they used a different analysis, they still looked at the prior art, and applying the prior art in the ordinary observer test found no infringement. Here, in addition to the prior art, we also have the substantial file history with undisputed facts as to what Soft Pool said was different. Didn't your expert essentially concede that under the ordinary observer test you lose, there's infringement? On the 817 patent, he was looking at the old ordinary observer test, not in view of the prior art. In view of the prior art, there was no such concession made. So now you want to change the context. Sounds like you want a new trial. What he said is the ordinary observer test applies, and we infringe under the ordinary observer test. Now you want to go back and explain that. Sounds like you want a new trial too. No, we do not. But just to make sure I'm clear on the 817 patent, there was no concession about the ordinary observer test in view of the prior art. We believe that just as this court in Egyptian goddess collapsed the prior art into the analysis of the ordinary observer test in view of the prior art. Are you telling us that the Egyptian goddess made no change in the substantive law of design patents? Not at all, your honor. What I'm saying is that... Because you say it collapsed into the ordinary observer test, the point of novelty test. That sort of suggests as though under Egyptian goddess we now have one rather than two tests, but the totality is the same. I think in certain cases where the facts such as in Egyptian goddess, the result is going to be the same. And we believe that particularly for the 546 patent, and I will go through some of the drawings here in a second, that is the same. But to be clear, you had the old ordinary observer test and you had the old point of novelty test. The old ordinary observer test did not have any consideration of the prior art. Now you do have consideration of prior art, and that's the part of the point of novelty test that is now collapsed into the new ordinary observer test. In your closing argument on the 817, you said it includes the ordinary observer test, which we've told you we don't contest. So you didn't contest the ordinary observer test. We did not contest the ordinary observer test when you were not including prior art. But you didn't make that distinction, did you, at the time? No, because at that point the jury instructions... So you need a new trial too, don't you? Because you made a concession which would cost you an infringement verdict, but you say, well, the law has changed. We want consideration under the new law. Well, we can give you that. We'll give you a new trial. It doesn't sound like you can explain your concession otherwise without taking into consideration the new law. I think that that is correct, but I think that it's important also to break apart the 546 patent and the 817 patent. As stated in Saul Poole's brief, 98% of the sales that were issued in this case were based on the 546 patent. And if I could turn and look at the boards... The only difference between the 546 patent and the 841 patent is that the former has a circular pool and the latter has an oval pool. Is that correct? That is correct. You have two patents against two sets of products. So the 546 patent is... We have figure 10 here. That is from the 546 patent. The 817 patent is on oval pools. So it's a completely set of different pools that are accused under each patent. Am I correct in that the only difference in the design... These are design patents. The only difference in the design between the two patents is the shape of the pool. Is that correct? That is correct, but I want to make clear the shape is significant enough. I just want to be sure that I understand it. For example, such thing as the seams and the shape and so on, that's the same on both patents. The only thing is one is round as shown there and another one is oval. Actually, the seams are different in the two patents. The significant prosecution history that exists in the 546 patent for the lower uplifted portion and the outwardly protruding seams, that file history doesn't exist for the 817. So you would want to consider them separately. Did you urge the court to go ahead with the trial pending the Egyptian goddess? No, we did not. Did you have anything to say at all on that? No, we did not. We have two photographs and one figure. The figure on your left is the Prior Arts Tempo Pool. It says Soft Pool on it, but that's because Soft Pool purchased this pool from Tempo and put its label on it. This figure is from the prosecution history. It was submitted to the patent office. What do you want us to take from these? We certainly can't make any factual findings. We can't even be ordinary observers. We're not in the position of finding facts. So what do you wish us to do by making these observations? By looking at the fundamental principle of patent law that's been stated by this court many times, that you can't tell the patent office one thing to obtain a patent. That is, you can't argue for a narrow meaning at the patent office and then later argue for a different, broader interpretation in litigation. If the court below had made some kind of a finding on that and we had some decision on that to review, then we could go into that. But there hasn't been any decisions made on that, has there? There was a denial of our judgment as a matter of law at the lower court. That's one basis on which we are bringing this. Did the lower court write something in denying your motion? They did not, but it's clear from the record that the judgment's as a matter of law. Did the court write an opinion? The court did not write an opinion. It just said denied. Correct. We had summary judgment briefs on this issue that were never considered, and we incorporated those into our judgments as a matter of law with additional arguments based on evidence at trial, and those were summarily denied. In addition, there's law cited in our brief that when an issue such as this is fully briefed by both parties, that the court can consider it. Have you got a cross-appeal here? I'm trying to figure out. Help me out. You're saying there was a denial of some motion you made. I'm not aware that I'm reviewing that. As a defense to the appeal brought by Softpool, we are raising as a defense the arguments presented in our JMOL, which incorporated our summary judgment motions, that number one, application of Egyptian goddess. What we're reviewing here is the jury verdict, which was rendered under incorrect jury instructions. The issues, I think, are before us, are whether or not that requires a new trial or whether or not there's a waiver. Are there any issues beyond that? Those are the only issues stated to us. The issues that we stated in our brief being raised as defenses to the appeal raised by Softpool raised the issues of applying Egyptian goddess, the new ordinary observer test, based on the clear prosecution history statements, and also application of prosecution disclaimer that was also raised at the lower court and denied through the JMOLs. Looking at the Temple Pool trial... Let me ask you a slightly different question. Suppose Egyptian, our decision, and the bank's decision, and Egyptian goddess have been raised two days, had this been decided two days before the jury was instructed in this case. And when Egyptian goddess was brought to the attention of the district court, the magistrate judge said, I don't want to hear anything about that. I know how I'm going to handle this case. Could you possibly then argue that, despite all of that, the judgment should be affirmed? I want to make sure I understand. My hypothetical, to make it oversimplified a little bit, is that Egyptian goddess was decided before, rather than after, the jury instructions were given. And despite that, the trial judge insisted on giving the old instructions. My question to you is, could you rely on prosecution history or anything else to try to sustain that judgment or wouldn't you have to say that judgment cannot stand because it's inconsistent with the law at the time it was rendered? I think there are two points. One is the issue of prosecution disclaimer is completely independent from Egyptian goddess. So regardless of anyone's positions or views on Egyptian goddess, the law of prosecution disclaimer, that is a patentee cannot argue one thing at the patent office and then argue something different during litigation applies in this case. And on that independent basis, based on the close tempo pool prior art, based on the representations made at the patent office, that verdict, just as this verdict, when you look at the plein air standard, can be sustained looking just at the prosecution disclaimer. The second question, as I understand it, is... Do you want to make a finding on that? On prosecution disclaimer? Not specifically. But you can look at the jury as instructed. Parts of what were included in the claim construction of bringing those representations into the instructions. The jury could have very well made their finding based on that. What it seems to me you are arguing is that even assuming the jury instructions were wrong, we could still affirm the jury verdict because there was sufficient evidence before the jury to support it. That seems to me your basic argument. It is, and that's consistent with this court's recent decision in kinetic concepts. Even if there is an erroneous jury instruction where the objection is raised for the first time on appeal, just as this, the plein air standard applies. And in the Fifth Circuit, they say that it is a... The instruction was not wrong, was it, at the time it was given? The argument in the kinetic concepts case is that the instruction was wrong at the time it was given. But I'm talking about this case. In the present case, at the time the instruction was given, it was correct, wasn't it? That's correct, and in the KCI case, the kinetic concepts case, that instruction was given pre-KSR. Okay, I think that's sufficient. We've more than exhausted your time. Thank you. Mr. Majestic. I'll be very brief. First of all, in the kinetic concepts case can be distinguished because the court found that none of the pieces of prior art supported an obviousness defense, and this jury could not have based its verdict on obviousness, hence harmless error. I agree that counsel here really is arguing for a new trial. He really maintains and wins on his position that there is a new ordinary observer test, no instructions were given, and therefore we're both arguing for a new trial. In conclusion, this court should be sent back for a retrial, a similar matter to the non-presidential opinion in Park v. Smith Inc. v. CHF Industries, which was a summary judgment matter. This case has many factual issues, just as that case should be determined at the trial court level. I thank you for your time. Okay, thank you. Case is submitted.